IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADAM GREGORY GANER,

       Plaintiff,

v.                                             No. CIV-16-169 LAM

NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum* (*Doc. 18*), filed August 16, 2016 (hereinafter "motion"). On October 19, 2016, Defendant filed a response (*Doc. 20*) to Plaintiff's motion and, on October 31, 2016, Plaintiff filed a reply (*Doc. 21*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 3 and 11*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **AFFIRMED**.

      .

# I.   Procedural History

On August 27, 2013 (*Doc. 15-10* at 2-3), Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB"), alleging disability that began on January 30, 2003 (*Doc. 15-11* at 2). [1]   On September 4, 2013 (*id*. at 4-9), Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI"), alleging disability that began on January 1, 1999 (*id*. at 4).   On September 7, 2013 (*id*. at 10-16), Plaintiff filed an application for Childhood Disability Benefits (hereinafter "CDB") for himself, based on his mother's earnings record, alleging he had been disabled since January 30, 2003 (*id*. at 10), his eighteenth birthday (*id*.). [2] Plaintiff's DIB, SSI, and CDB applications were denied at the initial level on December 18, 2013 (*Doc. 15-6* at 41-43), and at the reconsideration level on November 17, 2014 (*Doc. 15-7* at 21-23). Plaintiff requested a hearing to review the denial of his applications (*Doc. 15-8* at 31-32), and Administrative Law Judge Eric Weiss (hereinafter "ALJ") conducted a hearing on March 17, 2015 (*Doc. 15-5* at 2-53).   Plaintiff appeared, represented by his former attorney, Michelle Baca, and testified (*id*. at 4; 6-43; 50-51).   Vocational Expert Judith Beard  (hereinafter "VE") also appeared and testified.   *Id*. at 21-22; 43-51).

On May 11, 2015, the ALJ issued a decision (*Doc. 15-4* at 5-20) finding that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time prior to January 29, 2007,

---

[1]   Plaintiff's last day of insured status for DIB was December 31, 2010.   Therefore, in order to receive such benefits, Plaintiff must have been disabled on or before that date.   *See* 42 U.S.C. § 423(a).

[2]   CDB could only be available to Plaintiff if he became disabled prior to the age of 22.   *See* 20 C.F.R. § 404.350(a)(5).

the date he attained age 22" and, similarly, "has not been under a disability" from January 30, 2003 through the date of the decision (*id*. at 19).   On June 9, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision.   [*Doc. 15-3* at 32].   On August 5, 2015, the Appeals Council denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision."   *Id*. at 19.   However, on November 4, 2015, the Appeals Council granted Plaintiff's request to submit additional evidence before entering a final decision (*id*. at 10), and a Confidential Forensic Misdemeanor Assessment, dated July 31, 2015 [3] (*id*. at 26-31, hereinafter, "Forensic Report"), was submitted for the Appeals Council's consideration.   On February 5, 2016, the Appeals Council again denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision."   *Id*. at 2.   In so ruling, the Appeals Council indicated that, although it had "considered the reasons [Plaintiff] disagreed with the [ALJ's] decision and the additional evidence," it found that the additional information "does not provide a basis for changing the [ALJ]'s decision."   *Id*. at 3.   Specifically, the Appeals Council indicated that the ALJ had decided Plaintiff's case "through August 5, 2015 [sic],"[4] and that the Forensic Report was "about a later time" and, therefore, did "not affect the decision about whether [Plaintiff was] disabled beginning on or before May 11, 2015."   *Id*.   The Appeals

---

[3] Although Plaintiff indicated in his motion that this report was not included in the administrative record (*Doc. 18* at 11), it can in fact be found there (*Doc. 15-3* at 26-31).

[4] The ALJ determined that Plaintiff was not disabled through the date of his decision (*Doc. 15-4* at19), which was dated May 11, 2015 (*id*. at 20).   From the Appeals Council's subsequent statements that the July 31, 2015 Forensics Report was "about a later time" and, therefore, did not affect whether Plaintiff was disabled "on or before May 11, 2015," it is clear that the Appeals Council's single reference to "August 5, 2015" was a drafting error, rather than a substantive one.

Council further instructed Plaintiff to file a new application if he wished to claim disability for a period after May 11, 2015.   *Id*.   This decision was the final decision of the Commissioner.   On March 8, 2016, Plaintiff filed his complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*,   522 F.3d 1093, 1096   (10th Cir. 2008)   (citing   *Hamilton v. Sec'y of Health & Human Servs.*,   961 F.2d 1495, 1497–98   (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands,  and  the  plaintiff  is  not  entitled  to  relief.   *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial  evidence  is  such  relevant  evidence  as  a  reasonable  mind  might  accept  as adequate  to  support  a  conclusion."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted);  *Hamlin*,  365 F.3d  at 1214 (citation  and  quotation  marks  omitted);  *Doyal*,  331 F.3d at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence  supporting  it."   *Langley*, 373 F.3d at 1118 (citation  and  quotation  marks  omitted); *Hamlin*,  365 F.3d  at 1214 (citation  and  quotation  marks  omitted).   While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must

4

include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III.   Applicable Law and Sequential Evaluation Process

For purposes of social security disability claims, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant

is able to perform other work in the national economy, considering his or her residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on January 30, 1985, and was 18 years old on January 30, 2003, the alleged date of disability onset.   [*Doc. 15-11* at 2].   He is now 32.   For the purposes of his disability claims, Plaintiff is considered to be a "younger person."[5]   Plaintiff is an intelligent and educated young man with a lengthy history of mental health issues.   Despite those issues, Plaintiff obtained a Bachelor of Science degree in political science from Portland State University in 2011 (*Doc. 15-11* at 31), and subsequently took and passed the licensing examinations that are required to engage in sales of insurance and securities (*Doc. 15-5* at 6-7).   During the period from December 2011 through April 2013, Plaintiff worked intermittently at various insurance companies, on a commission basis, attempting to sell insurance and offering financial advice and planning to people.   *Id.* at 7.   The ALJ found that "[t]reatment notes from 2003 until [May 2015] indicate that [Plaintiff]'s mental health condition improved with consistent medication and therapy and that his condition declined when he did not receive treatment."   [*Doc. 15-4* at 11].   Despite testifying at the hearing that the medications he had taken for his mental health issues were ineffective, even "caus[ing] more cognitive problems" for him, and that he "didn't get any benefit out of" seeing psychiatrists (*Doc. 15-5* at 30-31), Plaintiff does not challenge that finding by the

---

[5]  *See* 20 C.F.R. §§ 404.1563(c) and 416.963(c) (defining a "younger person" as "under age 50").

ALJ.  The finding was based on the ALJ's review of Plaintiff's medical records, which are discussed in detail in the ALJ's decision.  *See* [*Doc. 15-4* at 11-17].

Plaintiff's medical records include:   treatment notes for the period from January 3, 2003 to January 19, 2007 from Hector Rodriguez, D.O. (*Doc. 15-13* at 11-44); treatment notes for the period from September 15, 2008 to December 1, 2009 from Hank Robb, Ph.D. (*Doc. 15-14* at 4-6); treatment notes for the period from December 18, 2006 to April 4, 2013 from Richard Howell, D.O. (*Doc. 15-15* at 3 through *Doc. 15-17* at 6); consultative Disability Determination Examination, dated November 13, 2013, by Louis Wynne, Ph.D. (*Doc. 15-19* at 32-35); treatment notes for the period from April 10, 2014 to July 18, 2014 (*Doc. 15-23* at 3-44) and Discharge Summary (*id*. at 49-50) from the Wellness Treatment Center; and consultative record review dated December 6, 2014 from Henry Schniewind, M.D. (*id*. at 51).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that, although Plaintiff had worked after the alleged disability onset date, the work he had done "did not rise to the level of substantial gainful activity."   [*Doc. 15-4* at 8].   At step two, the ALJ found that Plaintiff has had the following severe impairments since "[p]rior to attaining age 22 . . . Bipolar Disorder, depressed with psychotic features; Attention Deficit Disorder (ADD) by history; Hallucinogenic, amphetamine, and inhalant abuse; Generalized Anxiety Disorder; Obsessive-Compulsive Disorder; Depression; and Panic Disorder with agoraphobia and paranoid delusions."   *Id*.   At the third step, the ALJ found that Plaintiff has not had "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1  (20 CFR 404.1520(d),  404.1525,  404.1526,  416.920(d),  416.925,  and

416.926)," either prior to or after turning age 22.   *Id.*   In so finding, the ALJ considered Listings 12.02 (Organic Mental Disorders), 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders).   *Id.*   With respect to the paragraph B criteria for these Listings, the ALJ found that Plaintiff has moderate restriction of his activities of daily living, moderate difficulties with social functioning, moderate difficulties with concentration, persistence or pace, has had no episodes of decompensation of extended duration and, therefore, does not satisfy the criteria.   *Id.* at 9-10.   The ALJ then determined that Plaintiff also did not meet the paragraph C criteria for the Listings.   *Id.* at 10. Prior to step four, the ALJ determined that, for the period "prior to attaining age 22 and continuing to the present," Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations:  He is limited to understanding, carrying out and remembering simple instructions, and making commensurate work-related decisions.  He may maintain concentration, persistence and pace for up to 2 [hours] at a time with normal breaks throughout the workday.  He is limited to occasional interaction with supervisors and co-workers and no interaction with the public.

*Id.*   In support of this RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."   *Id.* at 16.

At step four, the ALJ found that "[p]rior to attaining age 22 and continuing to the present, [Plaintiff] was unable to perform any past relevant work" because his "current RFC allows no contact with the public and only occasional interaction with co-workers and supervisors."   *Id.* at 17-18.   At step five, the ALJ found that, both prior to and after age 22, there were jobs that

existed in significant numbers in the national economy that Plaintiff could have performed.   *Id*. at 18-19.   The ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the following representative jobs:   laundry laborer, (DOT 361.687), hand packager (DOT 920.587-018), and janitor (DOT 381.687-018), all of which are medium exertional, unskilled jobs.   *Id*.   The ALJ concluded that a finding of "not disabled" was appropriate for the periods both prior to and after Plaintiff reached age 22.   *Id*. at 19.

## **V.   Analysis**

In his motion, Plaintiff argues that:   (1) the ALJ did not properly evaluate the opinion of non-examining psychologist Donald K. Gucker, Ph.D. (*Doc. 18* at 8-10); the ALJ did not properly evaluate the opinion of examining psychologist Louis Wynne, Ph.D. (*id*. at 10-11); and (3) the Appeals Council improperly failed to consider new material evidence (*id*. at 11-12).   Defendant responds that:   (1) Dr. Gucker's opinion is consistent with the ALJ's decision (*Doc. 20* at 12-14); (2) the ALJ reasonably assessed Dr. Wynne's opinion (*id*. at 14-15); and (3) the Forensic Report should not have been considered because it is not relevant to the time period prior to the ALJ's decision (*id*. at 15-16).   In his reply, Plaintiff asserts that the ALJ failed to properly explain the differences between his findings and the expert opinions.[6].   [*Doc. 21*].

---

[6] Plaintiff also indicates that the SSI application he filed in response to the Appeals Council's suggestion that he do so resulted in the granting to him of SSI benefits.   [*Doc. 21* at 2].

### A.   The ALJ's Consideration of the Opinion of Dr. Gucker

Plaintiff contends that the ALJ's RFC conflicts with the opinion of Dr. Gucker, because it does not incorporate moderate limitations expressed in Dr. Gucker's opinion, and is less restrictive with respect to social contact.   [*Doc.* 18 at 8-10].  Defendant responds that Plaintiff's reliance on Dr. Gucker's responses in Section I of his opinion is misplaced, as Dr. Gucker more fully explained his findings in Section III of his opinion.   [*Doc.* 20 at 12].   Defendant also claims that the ALJ's RFC actually restricted Plaintiff's contact with others more than did Dr. Gucker's.   *Id.* at 13-14.

Dr. Gucker reviewed Plaintiff's medical records and disability filings on behalf of the state Disability Determination Services ("DDS") at the reconsideration level of Plaintiff's DIB claim. [*Doc. 15-6* at 52-55].   As such, Dr. Gucker is considered a non-examining expert, whose opinions are ordinarily given less weight than those of either treating or examining experts.   *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all").   In this case, the ALJ assigned "great weight" to Dr. Gucker's opinion because "he is experienced at reviewing records and assigning mental residual functional capacities," and "his opinion is consistent with the record and [Plaintiff]'s testified ability to live alone and make his own way to his hearing."   [*Doc. 15-4* at 17].   Significantly, Dr. Gucker's conclusion was that Plaintiff retained the capacity to perform

work, despite his mental impairments and related non-exertional limitations, concluding in his mental RFC[7] (hereinafter "MRFC") analysis of Plaintiff that:

> Based on mental issues only, when treatment/medication compliant and substance free, [Plaintiff] retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficient [sic] to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; interact appropriately with coworkers, supervisors and the general public on an incidental basis.

*Id.* at 59.

## 1. Dr. Gucker's moderate limitations

The Tenth Circuit has stated, based on the Social Security Administration's Program Operations Manual Systems (hereinafter "POMS"), that "[t]he purpose of [S]ection I [of the mental RFC form] . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the [Plaintiff]'s degree of limitation . . . **It is the narrative** written by the psychiatrist or psychologist in Section III . . . **that**

---

[7] Appropriate use and consideration of the mental RFC form, SSA-4734-F4-SUP, has been discussed many times by the Tenth Circuit Court of Appeals.  *See, e.g., Nelson v. Colvin*, 655 F. App'x 626 (10th Cir. July 12, 2016) (unpublished); *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. November 12, 2015) (unpublished); *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. March 13, 2013) (unpublished).  *See also* POMS DI 24510.060, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (site last visited February 16, 2017).  Although the form filled out by Dr. Gucker is similar to the official MFRCA form, it is not identical, and thus the official form sections must be inferred.  Section I of the official form, "Summary Conclusions," lists twenty work functions in the following four categories:   A. Understanding and Memory; B. Sustained Concentration and Persistence; C. Social Interaction; and D. Adaptation.   Section I is the "worksheet" of the form, in which the evaluator rates all twenty functions as either not significantly, moderately, or markedly limited, or indicates either that there is no evidence of a limitation or that no rating can be made on the available evidence.   Section II is specifically limited to any functions that cannot be rated on the evidence available, and requires the evaluator to indicate what additional documentation is needed.   Section III is where the evaluator explains his or her summary conclusions in narrative form.   POMS DI 25020.010, available at http://policy.ssa.gov/poms.nsf/lnx/0425020010 (site last visited February 16, 2017).

**adjudicators are to use as the assessment of RFC.**"   *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. January 20, 2015) (unpublished) (citing POMS DI 25020.010 B.1).   Nonetheless, Plaintiff asserts that the ALJ erred by not specifically incorporating Dr. Gucker's findings in Section I of his MRFC that Plaintiff is "moderately limited" with respect to his abilities to "sustain an ordinary routine without special supervision" (*Doc. 15-6* at 57) and to "maintain socially appropriate behavior and to adhere to basic standards of and neatness and cleanliness" (*id*. at 58).

Dr. Gucker provided a detailed narrative in Section III of Plaintiff's MRFC.   *Id*. at 53-55. In that summary, Dr. Gucker summarized his findings and concluded that Plaintiff retained the capacity to work.   *Id*.   Although the ALJ did not specifically address each finding made in Section I of Dr. Gucker's MRFC, he assigned great weight to Dr. Gucker's opinion and also concluded that Plaintiff is capable of working.   [*Doc. 15-4* at 17].   His failure to specifically discuss each moderate limitation assessed by Dr. Gucker in the "worksheet" portion of the MRFC "is not problematic."   *Atkinson v. Astrue*, 389 F. App'x 804, 807-08 (10th Cir. July 29, 2010) (unpublished).   Thus, where the ALJ accepts an expert's "ultimate opinion," discussion of every limitation used by that expert to reach his conclusion is unnecessary.   *Id*. (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) for the proposition that "while an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of evidence"). Moreover, the Tenth Circuit recently reiterated that an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity."   *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).

### 2.  Social interaction limitations

Dr. Gucker concluded that Plaintiff can "interact appropriately with coworkers, supervisors and the general public on an incidental basis."  [*Doc. 15-4* at 59].   The ALJ concluded that Plaintiff "is limited to occasional interaction with supervisors and co-workers and no interaction with the public."  *Id*. at 10.  Plaintiff argues both that the terms "incidental" and "occasional" differ in frequency, as well as that the ALJ failed to explain why Plaintiff is more able to interact with co-workers and supervisors than with the public.  [*Doc. 18* at 10].   The second of these arguments assumes that Dr. Gucker intended the term "incidental" to apply to coworkers and supervisors as well as to the general public.   If it did not, Dr. Gucker's social contact limitation would apply only to the general public, and Plaintiff would not be limited with respect to coworkers or supervisors.   Based on the syntax of his statement, it appears that Dr. Gucker intended his "incidental" contact limitation to apply to all three types of interaction.   However, the Court does not agree with Plaintiff's claim that the ALJ's use of the term "occasional" is in conflict with Dr. Gucker's use of the term "incidental."[8]   These terms are, in fact, considered to be synonyms.[9]   Moreover, Plaintiff's assertion that incidental contact is less than occasional contact is unpersuasive.   With respect to frequency, "incidental" is also defined as "occurring merely by

---

[8] Plaintiff defines "incidental" as "happening as a minor part" and "occurring merely by chance," using Merriam-Webster's Dictionary.   [*Doc. 18* at 10].   He defines "occasional," using the definition of "occasionally" in Soc. Sec. Rep. 83-10 at *5, as "occurring from very little up to one-third of the time."   *Id*.   Using these definitions, Plaintiff asserts that incidental contact is "clearly less" than occasional contact.   *Id*.

[9] *See* http://www.thesaurus.com/browse/incidental (site last visited February 10, 2017).

chance or without intention or calculation," [10] and "occasional" is defined as "encountered, occurring, appearing, or taken at irregular or infrequent intervals." [11]   Thus, the Court is not persuaded that there is a significant difference between "incidental" and "occasional" interaction, as those terms were used with respect to Plaintiff's social limitations.

Plaintiff additionally cites a Second Circuit case for the proposition that "moderate" is a more severe restriction than "occasional."   [*Doc. 18* at 10] (citing *Kohler v. Astrue*, 546 F.3d 260 (2nd Cir. 2008)).   The Court can only assume Plaintiff is referring to page 268 of *Kohler*, which reversed an ALJ's determination of non-disability for failure to comply with the "special technique" for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and, in the process, gave an example of a deficiency that the ALJ failed to mention an expert's opinion that claimant had "moderate" limitations in social functioning.   The court stated that this moderate limitation "suggest[ed] a more negative assessment than was reached by the ALJ."   *Id.*   The ALJ in *Kohler* had not even evaluated the § 404.1520a categories, which was the reason for the court's reversal, but had stated that there were no treating reports to the effect that claimant had "more than occasional problems in social and occupational functioning."   *Id.* at 267-68.   Plaintiff's statement that *Kohler* "held that a moderate limitation is a more negative assessment than is

---

[10] https://www.merriam-webster.com/dictionary/incidental (site last visited February 16, 2017).

[11] https://www.merriam-webster.com/dictionary/occasional (site last visited February 16, 2017).   Within the social security context, the term "occasional" typically means "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."   Soc. Sec. Rep.  96–9p, at *3. "Incidental" is not defined in POMS.

occasional" is an overstatement, especially since Plaintiff fails to discuss a somewhat inconsistent view expressed by the Tenth Circuit in the *Carver* case.   In *Carver*, a medical expert indicated, in Section I of an MRFC, that the plaintiff was "moderately" limited in the ability "to accept instructions and respond appropriately to criticism from supervisors," then opined in Section III that the plaintiff could "relate to supervisors and peers on a superficial work basis," in a work situation involving "simple tasks with routine supervision."   *Carver*, 600 F. App'x. at 618.   The court rejected the plaintiff's assertion that the ALJ's corresponding limitation, which restricted the plaintiff to simple instructions and interaction with co-workers and supervisors "under routine supervision," should have included the word "superficial," noting that "[i]nteracting with supervisors in the course of routine supervision over simple work is tantamount to the 'superficial' interaction typically encountered in jobs involving such work.   To conclude otherwise would parse the ALJ's language too finely."   *Id.* at 620.

Plaintiff also argues that the ALJ improperly failed to explain why he found Plaintiff to be less able to interact with the public than with coworkers and supervisors.   [*Doc. 18* at 9].   What Plaintiff fails to explain is how that difference is prejudicial to him.   In fact, the ALJ determined that Plaintiff should have no interaction with the public, while Dr. Gucker found that such interactions should be only incidental.   As already discussed, Dr. Gucker's and the ALJ's limitations regarding coworkers and supervisors were essentially the same; each found that such interactions could take place on a limited basis.   However, although the ALJ's "no interaction with the public" determination differs from Dr. Gucker's finding that Plaintiff could have "incidental" interactions with the public, the difference works in Plaintiff's favor, since the ALJ's

limit is more restrictive.   An ALJ may moderate a medical opinion in the plaintiff's favor without explanation.   *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

### 3.   Substance-free requirement

Plaintiff also claims that both Dr. Gucker[12] and the ALJ should not have based their opinions on Plaintiff remaining "substance-free," relying on *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001).   [*Doc. 18* at 9].   However, Plaintiff's reliance on *Drapeau* is misplaced, as that case merely holds that statutory and regulatory provisions regarding substance abuse require that, where substance abuse is an impairment, the need to consider its role in disability only arises once the claimant has been determined to be disabled.   *Drapeau*, 255 F.3d at 1214-15 (a finding of disability is a condition precedent to a determination under 42 U.S.C. § 423(d)(2)(C) that, without the substance abuse, the claimant would not be disabled).   Here, the ALJ did not determine Plaintiff to be disabled and, therefore, was not required to make a determination regarding whether or not Plaintiff would still be disabled if he did not engage in substance-abuse.   Even so, the ALJ here found that Plaintiff's substance abuse was not "material to this case," as his "mental health conditions are severe even when he is not abusing substances." [*Doc. 15-4* at 14].   Although the ALJ was not required to determine the effect of Plaintiff's substance abuse unless and until a determination was made that Plaintiff was disabled, such a

---

[12]   The argument that Dr. Gucker erred by assuming Plaintiff to be substance free is perplexing, since Plaintiff relies on Dr. Gucker's opinion in his arguments that the ALJ erred.   It thus appears that Plaintiff is engaging in the very "picking and choosing" of evidence of which he accuses the ALJ.   Nonetheless, this Court's duty is to review the Commissioner's decision, not to review alleged errors by medical experts, and it may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."   *Bowman v. Astrue* 511 F.3d 1270, 1272 (10th Cir. 2008).

finding, in either case, benefits Plaintiff, since he could not be found disabled if his substance abuse was a material factor in that disability.   Soc. Sec. Rep. 13-2p, at *4 (drug addiction is "material" to a disability determination if the claimant would not meet the definition of disability "if he or she were not using drugs" and, if the drug use is material, the claimant will be found "not disabled").   Therefore, to the extent the ALJ's premature finding regarding substance abuse could be considered to be an error, it was harmless.

### B.   The ALJ's Consideration of the Opinion of Dr. Wynne

Plaintiff's arguments regarding the ALJ's consideration of Dr. Wynne's opinion is similar to the arguments he raised regarding Dr. Gucker's opinion, which the Court already rejected. With respect to Dr. Wynne, Plaintiff claims that the ALJ "[i]nexplicably . . . failed to explain why he found less [sic] restrictions in dealing with supervisors and co-workers than he did with the general public."   [*Doc. 18* at 11].   This argument suffers from the same flaws as did the same argument with respect to Dr. Gucker.   Dr. Wynne performed a single mental examination of Plaintiff on November 13, 2013, and opined that Plaintiff "could not interact well with the general public, his coworkers, or his supervisors."   [*Doc. 15-19* at 34].   The ALJ acknowledged that opinion and incorporated it into his RFC by limiting Plaintiff to no interaction with the public and only occasional interaction with supervisors and coworkers.   *[Doc. 15-4* at 10, 15].   Plaintiff does not even attempt to explain how limiting Plaintiff to only occasional interaction with

supervisors is inconsistent with Dr. Wynne's opinion that he "could not interact well" with supervisors.[13]

Significantly, Dr. Wynne did not render a MRFC for Plaintiff, did not express an opinion that Plaintiff was unable to work, and did not state that Plaintiff should have no contact with supervisors.  To the contrary, Dr. Wynne indicated that Plaintiff, whom he had not previously met, had "maintained good eye contact, related easily, and was cooperative."  *Id*. at 32. Dr. Wynne noted that Plaintiff's hygiene and grooming were "appropriate" (*id*.), that he showed "no evidence of confusion, tangentiality, circumstantiality, or evasion and his sensorium seemed clear with no indication of psychosis or any drugs" (*id*. at 32-33), that his ability to remember and carry out a written three-part set of directions and to abstract was "unimpaired," as was his "ability to present a plausible, detailed, and comprehensive personal history" (*id*. at 33).  The ALJ gave "partial weight" to Dr. Wynne's opinions -- agreeing with his conclusion that Plaintiff "cannot interact well with the general public, his coworkers, or his supervisors," but also noting that his

---

[13] Although Plaintiff claims that two cases from outside the Tenth Circuit have determined that a "poor ability to deal with supervisors and co-workers" would preclude any employment (*Doc. 18* at 11), he cited no cases to that effect from this circuit, nor is the Court aware of any.  Moreover, there is a great deal of subjectivity in Dr. Wynne's statement that Plaintiff "could not interact well with the general public, his coworkers, or his supervisors" (*Doc. 15-19* at 34), which the ALJ interpreted as limiting Plaintiff to only "occasional" interaction with supervisors or co-workers, and no interaction with the public, based not only on Dr. Wynne's opinion, but also on the opinion of Dr. Gucker, the medical records, and Plaintiff's own testimony.  That interpretation is, quite simply, both supported by substantial evidence, as well as reasonable on its face.

assessment of Plaintiff with a score of 45 on the GAF scale was "not consistent with the overall exam."[14]   [*Doc. 15-4* at 15].

In his reply brief, Plaintiff emphasizes that his objection to the ALJ's social interaction limitation was not that no contact with the public was included, but instead, that the ALJ failed to explain his reasons for including it.   [*Doc. 21* at 1].   Again, however, an ALJ need not explain why he imposed restrictions that exceed the ones expressed by a medical expert, since more stringent restrictions favor the claimant.   *See, e.g., Chapo*, 682 F.3d at 1288.   In other words, Plaintiff here complains about a restriction that benefits, rather than prejudices, him.

### C.   The Appeals Council's Consideration of New Evidence

Plaintiff contends that the Appeals Council failed to consider the July 31, 2015 Forensic Report as "new evidence" that supports his DIB claim.   [Doc. 18 at 11-12].   Under the regulations in effect at the time of the Appeals Council's decision, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."   20 C.F.R. § 404.970(b) (1987).   Thus, additional evidence that is submitted to the Appeals Council need

---

[14] A GAF ("Global Assessment of Functioning") score is a measurement of a clinician's judgment of an individual's psychological, social and occupational functioning.   DSM-IV-TR at 32.   A GAF score of 45 falls within the range of 41-50 and indicates "[s]erious symptoms" such as "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or "serious impairment in social occupational or school functioning (e.g., no friends, unable to keep a job)."   *Id.* at 34.   The Court also views Dr. Wynne's assigned GAF score to be inconsistent with his descriptions of Plaintiff's functioning at the time of the interview.   In any event, GAF scores were omitted from the most recent version of the DSM for reasons that include "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."   *Richards v. Colvin,* 640 F. App'x 786, 791 (10th Cir. Feb. 12, 2016) (unpublished).

only be considered if the evidence is "new, material, and chronologically pertinent." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).   In this case, the Appeals Council indicated that it had "looked at" the Forensic Report and determined that it was about a later time than the one considered by the ALJ.   [*Doc. 15-3* at 3].   This is a legal determination, which is reviewable by this Court *de novo*.   *Threet*, 353 F.3d at 1191.

In *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished), the Tenth Circuit reversed an Appeals Council decision that rejected additional evidence, including a psychological evaluation that "took place after the ALJ's final decision," on the basis that the "new information is about a later time."   Noting that "temporal relevance" was "one of the predicate requirements" of § 404.970(b), the *Padilla* court considered, *de novo*, whether the new information was about a later time, and ultimately determined that the new psychological report was temporally relevant, because it corroborated other experts' opinions that took place during the time in question.   *Id.*   Here, Plaintiff contends that the Forensic Report is material "because it relates to the mental health issues suffered by [Plaintiff] since elementary school," and is temporally relevant because it "relates to the period of time on and before the ALJ's decision because it addresses the diagnoses by history of schizophrenia, panic disorder, agoraphobia, OCD, and cannabis use, and the nonexertional limitations suffered by [Plaintiff] due to his mental impairments."   [*Doc. 18* at 12].

There are several flaws in Plaintiff's reasoning.   First, as Plaintiff admits, the Forensic Report simply listed diagnoses "by history" as provided by Plaintiff and/or his mother during a one-hour and forty-minute assessment on July 29, 2015.   [*Doc. 15-3* at 27, 30].   That interview took place more than four months after Plaintiff testified at the hearing before the ALJ, and the

only medical records available to the examiners were created in, and related to, a period of time that occurred entirely after issuance of the ALJ's decision.[15]   Moreover, the Forensic Report neither confirmed nor corroborated any of Plaintiff's past diagnoses.   Rather, diagnoses were simply listed "by history," and without analysis.   *Id*. at 30.   Significantly, beyond its inclusion of a brief "Relevant History" (*id*. at 27-28), virtually the entire Forensic Report is limited to evaluating Plaintiff's "current mental status" (*id*. at 28-31).   In fact, the sole purpose of the evaluation, which was to evaluate Plaintiff's "competence to stand trial" on criminal charges (*id*. at 27), dictated that it be limited to Plaintiff's mental status as of the date of the evaluation or later. Finally, the Forensic Report was specifically limited to the following three issues under New Mexico state law:   Whether Plaintiff had:  (1) a "factual understanding" of the charges and legal proceedings against him, (2) a "rational understanding" of those charges and proceedings; and (3) the ability to assist his attorney.   *Id*. at 26-27.   The charges themselves arose in June 2015, which was after the ALJ's decision issued.   Given its restrictive purpose and the failure of that purpose to relate in any way to the time period prior to the ALJ's decision, this Court finds, as a matter of law, that the Appeals Council did not err in its determination that the Forensic Report was not chronologically pertinent to the disability decision.

_____

[15]  The Forensic Report also briefly mentioned that some emergency room and behavior health notes from the University of New Mexico Hospital were reviewed by the examiners, all of which were dated after the ALJ's May 11, 2015 decision.   [*Doc. 15-3* at 27].   These records were not included in the Forensic Report, and were referenced only once, as follows:   "Recent records from UNMH indicate [Plaintiff] has been treated there for psychosis and was prescribed medications."   *Id*. at 28.   In addition, the Forensic Report specifically provides that "full accuracy of all the information provided in this report was unable to be substantiated" and, therefore, the report was "based on the assumption that the information provided was reasonably accurate."   *Id*. at 27.

# VI.   Conclusion

For the reasons stated above, the Court **FINDS** that Plaintiff has failed to establish prejudicial error by either the ALJ or the Appeals Council.

**IT IS THEREFORE ORDERED** that Plaintiff's ***Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum*** (*Doc. 18),* is **DENIED** and the Commissioner's decision in this case is **AFFIRMED.**   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**